

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
02/08/2021

| | | |
|---|---|---|
| IN RE: | § | |
| ALFRED  JACKSON | § | CASE NO: 19-33423 |
| Debtor(s) | § | |
| | § | CHAPTER  7 |
| | § | |
| | § | |
| ALLISON  BYMAN | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 20-03036 |
| | § | |
| | § | |
| GEORGE M. LEE | § | |
| Defendant(s) | § | |

## <u>MEMORANDUM OPINION</u>

This action stems from the actions between two parties, Alfred Jackson, debtor in the underlying bankruptcy case[1], and George Lee, a hard money lender and the defendant in this case. Their relationship began in May 2018, when Alfred Jackson was in imminent danger of losing his homestead to foreclosure.[2]

The Court has considered the pleadings and other papers filed in this adversary, and in Jackson's bankruptcy case, as well as the testimony of witnesses, the exhibits entered into evidence and the arguments of counsel.  For the following reasons, the Court finds that the trustee may not avoid the debtor's transfer of his homestead.  However, the trustee has met her burden to avoid the transfer of $174,000.00 made on the debtor's behalf pursuant to 11 U.S.C. § 548 and Chapter 24 of the Texas Uniform Fraudulent Transfer Act ("TUFTA").

### FINDINGS OF FACTS

In 2013, Alfred Jackson, together with his wife refinanced their real property homestead located at 1811 Kirby Drive, Houston, Texas 77019,[3] the "River Oaks Property."[4]  Thereafter, the Jacksons began having problems making loan payments on the River Oaks Property. So, on August 15, 2016, the Jacksons took out two loans from The First National Bank of Beeville totaling $2,725,885.00, to pay off the prior loan. Soon thereafter, the Jacksons defaulted on these two loans causing The First National Bank of Beeville to accelerate the notes and to post the

---

[1] 19-33423

[2] These transactions were also the basis of a complaint against the debtor, Alfred Jackson seeking to deny him a discharge pursuant to 11 USC § 727(a)(2)(A).  Adversary No. 20-3004.  This complaint was denied (ECF No. 71).

[3] The real property was Jackson's long-time homestead.  He had purchased the property in 1999 and had consistently lived there with his spouse until he left the home in April 2019.

[4] Joint Pretrial Statement, ECF No. 23 at p. 11

River Oaks Property for foreclosure multiple times, with a final foreclosure sale date of June 05, 2018.[5]

Prior to the foreclosure sale, Jackson attempted to sell the River Oaks Property and listed the River Oaks property for sale.  The debtor and his spouse entered into a written contract with Mark Cohen[6] to sell the property for $4.3 million. However, for reasons that could stem from a multitude of problems, this written contract was terminated by the potential buyer. One of the reasons that the parties acknowledged was that on April 12, 2018, Pieter Wilderom filed a *lis pendens* in the real property records,[7] which attached to the River Oaks Property. Jackson and Wilderom both testified that Jackson requested that the Wilderoms remove the *lis pendens,* but Jackson took no legal action himself to remove it from the River Oaks Property.[8]

Jackson then began negotiations with the defendant, George M. Lee. Initially, Jackson and Lee discussed the outright purchase of the River Oaks Property and entered into an earnest money contract for $3.2 million.[9] This was soon determined to be infeasible due to the looming foreclosure scheduled for June 05, 2018. The purchase would not have been possible because there was not time for the sale to close, as The First National Bank of Beeville would not agree to an additional extension of the foreclosure sale date as it had been previously postponed on several occasions.

On the day of the scheduled foreclosure sale, June 05, 2018, George M. Lee, purchased the notes from the bank in an arm's length transaction for a total price of $2,737,019.46.[10] On July 17, 2018, George Lee borrowed $2,298,332.93 from Frost Bank, securing the Frost Bank note with the notes that he had purchased on the River Oaks Property. Though Jackson averred he would make the payments required under his notes, he again was unable to meet these obligations and continued in default under the notes. At Jackson's request, Lee agreed to forebear on foreclosure as long as Jackson abided by certain stipulations. George Lee and the Jacksons memorialized this compact by executing the July 9, 2018 forbearance agreement.[11]

The forbearance agreement required the Jacksons to pay a forbearance transaction fee of $87,022.00, alongside a monthly sum of $28,808.49, which covered payment on the notes, interest and penalties. If the Jacksons failed to abide by these terms, the agreement provided that Lee would have the right to immediately terminate the forbearance and take any and all actions against the Jacksons, including foreclosure. Although Jackson testified that he made the first payment under the agreement, there was no evidence that the payment was actually made, and the remaining testimony was that the Jacksons defaulted immediately under the forbearance agreement.

---

[5] Joint Pretrial Statement, ECF No. 23 at p. 12.
[6] Residential Contract dated March 30, 2018 (ECF No. 71-5)
[7] ECF No.  71-6.
[8] There were a number of sales offers on the River Oaks property valued between $4.3 million and $3.2 million. None of these offers were consummated.
[9] Home Contract dated May 29, 2018 (ECF 71-10).
[10] Joint Pre-Trial Statement, ECF No. 23, pg. 3
[11] ECF No. 70-6

On August 14, 2018 Jackson executed an Affidavit in Support of Grantor's Deed in Lieu of Foreclosure,[12] which Lee filed in the real property records of Harris County, Texas.  This affidavit acknowledged that Jackson was in default of the notes on the property as well as the forbearance agreement.  The affidavit also states that debtor and his spouse relinquished all rights "to control, use or develop" the River Oaks Property.  However, the Jacksons did not execute the deed in lieu at this time, only the affidavit in support of such a deed.  Additionally, the Jacksons continued to live at the River Oaks Property and continued to try to market it for sale.  Although not the legal owner, Lee executed a sales contract with Visionary Homes Inc. for $3.5 million on the River Oaks Property[13] in September 2018. This contract also fell through.

Rather than foreclose on the property, on December 07, 2018, the Jacksons legally transferred title of the River Oaks Property to George M. Lee by deed in lieu of foreclosure in satisfaction of all of the Jackson's debt on the property, as well as a new affidavit in support of the deed in lieu.[14] Although they had deeded the River Oaks Property to Lee, the Jacksons continued to reside there as tenants until April 2019.  There was no evidence that the Jacksons ever paid any rent to Lee during this time.  Post deed in lieu Jackson and Lee orally agreed that if Jackson could find a buyer to purchase the property, they would split the profits after payment of all liens.  Jackson was unable to find a buyer, then in April of 2019, when he and his wife vacated the property this agreement ceased.

In January 2019, Lee, now the legal owner and in possession of the property, attempted to market the River Oaks Property for sale, and subsequently entered into a contract with Galleria Investment Trust, a Texas Trust. On April 09, 2019, Lee sold the River Oaks Property to the Galleria Investment Trust for $2.95 million.[15] At closing, Lee paid off his obligation to Frost Bank and was left with $598,547.85.[16]

On the same day, April 09, 2019, Lee purchased real property located at 6266 Woods Bridge Way, Houston, Texas 77007, the "Woods Bridge Property." The Jacksons voluntarily moved from the River Oaks Property to the Woods Bridge Property on or about that same date. Jackson's wife entered into a two-year lease with Lee dated April 22, 2019, signed on April 30, 2019.[17]

During this same time, Jeff Ballard, a friend of Jackson's, transferred $174,000.00 to George Lee, for the benefit of the debtor's spouse. These funds were allegedly used to prepay rent for the Woods Bridge Property, prepay property taxes on the Woods Bridge Property, and allow the Jacksons an option to purchase the residence at a reduced price. This transfer was not disclosed on any of Jackson's bankruptcy schedules, nor was this amount referenced anywhere in the Lease Agreement.  The pre-payments were disclosed in a one-page Lease Addendum that was allegedly attached to the original Lease Agreement.  However, the Lease Agreement and the Addendum were not disclosed until October 2019, six months after the initial Lease Agreement

---

[12] ECF No. 71-20
[13] ECF No. 71-21
[14] ECF Nos. 71-24 and 71-25
[15] The court finds this sale to be an "arm's length transaction" which by definition was the fair market value of the River Oaks property on the sale date.
[16] ECF No. 70-8
[17] ECF No. 70-10

was executed. Jackson at trial testified that the transfer of $174,000 was a loan from Ballard to him and another individual, Keith Smith.  This debt was not listed in the debtor's bankruptcy schedules and was a material omission on Jackson's list of creditors.

Prior to the filing of the first bankruptcy on April 30, 2019, and the second bankruptcy on June 29, 2019, several judgments were entered against Jackson, including one by Pieter Wilderom, who was responsible for executing the *lis pendens* on the River Oaks Property. As a result of a judgment in a separate lawsuit, in Case No. DC-17-01114 in the 298th Judicial District Court of Dallas County, Texas, the court appointed Andrew R. Korn as a receiver to collect on the judgment.  This receiver was appointed at some time prior to March 2019.  This receiver executed on Jackson's assets while he still resided at the River Oaks Property, and after he moved to the Woods Bridge Property.[18]

At issue before the Court are the two transfers made to George Lee. First, the transfer of the River Oaks Property, which was transferred by Deed in Lieu of Foreclosure in December 2018. Second, the transfer of $174.000.00 for the benefit of Alfred Jackson in April 2019. The trustee requests avoidance of the transfers, but not the avoidance of the sale of the River Oaks Property, only the perceived equity in it, and attorney's fees pursuant to 11 U.S.C. §§ 548(a)(1), 550, TEX. BUS. & COM. CODE § 24.006(a), and TEX. BUS. & COM. CODE § 24.005(a)(1) ("TUFTA §§ 24.005–24.006).

For the reasons so stated, the Court finds that the transfer of the River Oaks Property is valid and that the transfer was not made with fraudulent intent. The Court further finds that the Trustee has met her burden in proving that the $174,000.00 transfer was a fraudulent transfer made in violation of 11 U.S.C. § 548 and TUFTA which should be avoided.

## JURISDICTION AND VENUE

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C § 1334(b).  28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. In the Southern District of Texas, General Order 2012–6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## LEGAL ANALYSIS

The trustee has pleaded both state and federal law in her amended complaint.[19]  Both § 24.009(b) of TUFTA and § 550 of the Bankruptcy Code allow a claim for a money judgment against either

---

[18] Amended schedules, Case No. 19-33423, ECF No. 49, pages 34-43
[19] ECF No. 15.  See also  *In re Supplement Spot, LLC*, 409 B.R. 198, (Bankr. S.D. Tex. 2009),"A trustee may bring a cause of action for fraudulent transfers under either federal or state law, or both." *citing In re Houston Drywall, Inc*., 2008 WL 2754526 (S.D. Tex. July 10, 2008).

the initial transferee or the person for whose benefit the transfer was made.[20]   To prevail on a claim for fraudulent transfer under § 548(a)(1)(A), the Trustee must prove the following elements of § 548(a)(1)(A): (1) a transfer was made of the debtor's property; (2) the transfer was made within two years of the Petition Date; and (3) the transfer was made with actual intent to hinder, delay, or defraud the debtor's creditors.[21]

The elements of an actual fraudulent transfer under TUFTA are: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors.[22] Meanwhile, the elements of a constructive fraudulent transfer under Texas law are the same as actual fraudulent transfer except instead of pleading fraudulent intent, the plaintiff must plead facts demonstrating: (1) lack of reasonably equivalent value for the transfer; and (2) the transfer was 'financially vulnerable' or insolvent at the time of the transaction.[23]

The Trustee's fraudulent transfer claim pursuant to Section 548 and TUFTA against Lee stem from two transactions: (i) the transfer of the River Oaks Property, and (ii) the cash transfer of $174,000.00.

The Court addresses the transfer of the River Oaks Property.

The parties have stipulated that the River Oaks Property was the property of Alfred Jackson until December 07, 2018. That on December 07, 2018 the River Oaks Property was transferred by Jackson to Lee via a Deed in Lieu of Foreclosure. The underlying bankruptcy was filed on June 19, 2019. Thus, the transfer of property was made within two years of the petition date. Therefore, regarding the transfer of the River Oaks Property, the Court looks to whether there was actual intent to hinder, delay, or defraud the Debtor's creditors.

The Fifth Circuit has recognized that reliance on badges of fraud is permissible for establishing fraudulent intent, which include "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry."[24] In regards to Section 548, it is not necessary that all or any one of the badges of fraud be established to support a finding of actual fraudulent intent.[25]   However, Courts typically require a 'confluence' of multiple badges of fraud to establish actual intent [under TUFTA], but it is not necessary that all or any one of the badges of

---

[20] *Tow v. Speer*, 2015 WL 1053080 (S.D. Tex. March 10, 2015).
[21] *See* 11 U.S.C. § 548(a)(1)(A); *see also Havis v. AIG Sunamerica Life Assurance Co. (In re Bossart),* No. 06–3540, 2007 WL 4561300, at *8 (Bankr.S.D.Tex. Dec.21, 2007).
[22] *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019)
[23]   *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562, 566 & n.21 (Tex. 2016); TEX. BUS. & COM. CODE § 24.006(a)); *see* TEX. BUS. & COM. CODE § 24.005(a)(2).
[24] *In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008)
[25] *FDIC v. Sullivan (In re Sullivan),* 204 B.R. at 940; *Cullen Center Bank & Trust v. Lightfoot (In re Lightfoot),* 152 B.R. 141, 148 (Bankr.S.D.Tex.1993).

fraud be established to support a finding of actual fraudulent intent by the debtor."[26]

In determining the existence of badges of fraud, the Court looks to the facts surrounding the transfer of the River Oaks Property.

1) In transferring the River Oaks Property, Jackson received adequate consideration. In consideration of the transfer, Jackson received forgiveness of debt in an amount greater than $2.9 million. This forgiveness consists of ($2,737,019.46 – Beeville notes purchased by George Lee in June 2018, plus $175,024.55 – property taxes paid by George Lee). Although the trustee disputes the enforceability of the Forbearance Agreement and whether certain fees required by that agreement are actually due to Lee, she agrees that Lee was the holder of the promissory notes and assignee of the deed of trust, which required monthly payments of principal interest, taxes and insurance.[27] Under Lee's analysis, on the date of transfer, Jackson's obligations under the forbearance agreement approximated an additional $270,000.00, including accrued interest on the notes and additional property taxes – totaling approximately $3,102,072.18, not including unpaid attorney's fees or the forbearance transaction fees. It is the trustee's position that the liens totaled $2,988,791.44 or at most, $3,075,813.44.[28]  However, in addition to the payments of all liens on the River Oaks Property, this transaction provided additional indirect benefits to Jackson as it allowed Jackson to avoid losing the River Oaks Property to foreclosure[29] and gave him a place to live until the River Oaks Property sold on April 9, 2019.   Furthermore, the Texas Supreme Court has held that "as a matter of law, the value of the interest in an asset transferred for a security is reasonably equivalent to the amount of the debt that it secures."[30]   The trustee has neither alleged facts nor pointed to relevant evidence showing that had Lee foreclosed or sold the notes to another entity that foreclosed, the property would have sold above the notes' value.  The only evidence presented was that the River Oaks Property sold for $2.95 million.

2) There was no familial, friendship, or close associate relationship between the parties. George Lee and Alfred Jackson were introduced just prior to the scheduled June 05, 2018 foreclosure sale. No evidence has been admitted persuading the Court that a close relationship exists between the parties.

---

[26] *Osherow v. Tex. Silica Logistics Joint Venture, LLC (In re FWLL, INC.),* Case No. 15-52071, Adv. No. 16-05023, 2018 WL 1684308, at *17 (Bankr. W.D. Tex. Apr. 5, 2018)

[27] ECF Nos. 12 and 13.

[28] Trustee's Post Trial Brief, ECF No. 86.

[29]  The court finds the foreclosure sale would have occurred but for the sale of the notes to Lee and that Jackson would have received nothing from the foreclosure sale.  Additionally, both Jackson and Lee [for different reasons] where highly motivated to sell the River Oaks property to the highest bidder.  They were both unable to sell the property above the $2.95 million dollar offer that actually closed.  Jackson has wealthy friends, including the one who loaned him $174,000 at a time when his financial life was in a free fall.  If the property had excess value past the $2.95 million sale the court believes Lee would have sold it to one of them. Additionally, Lee is a hard money lender who is experienced in real estate.  If he could have sold the property for more than $2.95 million the court finds he would have.  The Trustee's allegations of average value considering these facts falls flat.

[30] *First Nat'l Bank of Seminole v. Hooper*, 104 S.W. 3d 83, (Tex. 2003); *see also In re Richards & Conover Steel, Co.*, 267 B.R. 602 (8th Cir. BAP 2001) (if the indirect benefit constitutes reasonably equivalent value to the debtor, a trustee cannot avoid the transfer as fraudulent).

3) Jackson retained possession of the River Oaks Property, despite a signed affidavit acknowledging that he no longer resided there. However, this possession was not for any fraudulent reason. Rather, with the consent of Lee, Jackson and his wife resided at the property for approximately four months after the date the River Oaks Property was transferred to Lee.  There was no evidence that the debtor attempted to retain control of the River Oaks Property and the evidence shows that it was George Lee and not the Jacksons who entered into contracts for sale of the River Oaks Property (one in September 2018 before the transfer, and one in January 2019, after the transfer).

4) The River Oaks Property was encumbered with more than $2.9 million in mortgage debt in December 2018. Three weeks after the time of the Lee transfer, the evidence of the sales contract with Galleria Investment Trust, a Texas Trust in the amount of $2.95 million showed that the value equaled the liens.[31]

5) The evidence showed that the debtor was having financial difficulties as there were at least two separate parties that received judgments against Jackson.  In addition, prior to the filing of the bankruptcy a receive was appointed to execute on the judgments.

6) This factor weighs in favor of Jackson and Lee. The transfer was made to avoid foreclosure, not to avoid the *lis pendens* or to the detriment of other creditors.

Overall, the analysis favors Lee, as the transfer of the River Oaks Property did not make it more difficult for any of Jackson's creditors to reasonably collect on their debts. In regards to this transfer, the Trustee argues that Jackson's actions to attempt to work around the *lis pendens* are proof that he planned to defraud his creditors. A *lis pendens* is a "notice of litigation, placed in the real property records, asserting an interest in the property and notifying third parties that ownership of the property is disputed."[32] The effect of filing a notice of *lis pendens* in Texas is the functional equivalent of an involuntary lien.[33] Past courts have held that for the *lis pendens* status to apply, an "adequate nexus must exist between the asserted claims and the subject property."[34] If, in fact, no such nexus exists, a party may apply to expunge the notice, if the pleading does not contain a real property claim.

Here, no such nexus existed. Rather, the Court notes that the only judgment in evidence that the trustee alleged was related to the *lis pendens* is the judgment of Thomas Tieh,[35] which relates to a breach of contract claim in the amount of $298,000.00. Pieter Wilderom, the party who placed the *lis pendens*, testified at trial that he sued for misappropriation of funds.[36] Because the pleading did not contain a real property claim, Jackson would have been entitled to have the *lis pendens,* which was referenced the River Oaks Property, expunged pursuant to Tex. Prop. Code Ann. § 12.0071(c)(1). Therefore, the existence of an improper *lis pendens* cannot support the trustee's position.

---

[32] *Jetall Cos. v. Van Dyke*, No. 14-19-00104-CV, 2019 WL 2097540, at *5 (Tex. App.—Houston [14th Dist.] May 14, 2019, no pet.) (mem. op.).1

[33] *In re Thornberg,* 277 B.R. 719 (Bankr. E.D. Tex. 2002)

[34] *Olbrich v. Touchy*, 780 S.W.2d 6, 7 (Tex. App.—Houston [14th Dist.] 1989, no writ**)**

[35] ECF No. 68-3

[36] Wilderom's testimony suggested that his misappropriated funds somehow were funneled into the debtor's homestead and that because of this allegation he could maintain a lis pendens against the River Oaks property. There was no evidence in the record that this allegation is true.  While these claims may have been made either by Wilderom or the receiver appointed by the state court they were not substantiated at trial.

Based on the analysis, the trustee's claims regarding the transfer of the River Oaks Property pursuant to § 548(a)(1)(A) and TUFTA fail.

The Court turns to the cash transfer of $174,000.00. Section 547(b) provides that the trustee may avoid a transfer "of an interest of the debtor in property."[37]   It is uncontested that Jeff Ballard, a friend of Jacksons, loaned $174,000.00 to Lee on April 03, 2019 for the benefit of Jackson. There was no evidence that Jackson controlled these funds at any time, but the evidence did show that Jackson requested the money and that the money was for his benefit.  It is also uncontested that the money was for the benefit of one of Jackson's creditors, Mr. Lee.  After hearing testimony, and reviewing the evidence provided, the Court finds that the $174,000.00 was an asset of Jackson's at the time of transfer, and that the transfer was made within two years of the petition date. Therefore, the Court looks to whether there was actual intent to hinder, delay, or defraud the debtor's creditors.

1) There has been no evidence proving that adequate consideration was provided for the transfer of $174,000.00. Jackson and Lee suggest the funds were used for the prepayment of rent and quarterly taxes. However, there is no mention of this transfer in the initial lease, and these amounts were not disclosed in Jackson's initial schedules.
2) There has been no evidence supporting the existence of a close relationship between the parties. Lee acted first as a hard money lender, and then as a landlord to Jackson.
3) Yes, Jackson retained at least some benefits of the transfer of the cash. The transfer was made to Lee with the intent to act as a down payment, or an option to purchase the Woods Bridge Property, or for rent, or for taxes.
4) The amount of property would likely, and did, affect the "financial condition of the [debtor]."
5) At the time of the transfer, several parties had received judgments against Jackson, including the Wilderoms.  The transfer of funds was made with the intent to avoid the judgments against Jackson and the receiver, who was as described at trial "very aggressive."
6) This factor weighs in favor of the Trustee. At the time of the bankruptcy filing, Jackson failed to disclose the transfer of the $174,000.00 on his bankruptcy schedules. Only after the Trustee uncovered the cash transfer did Jackson produce the lease addendum,[38] which was not executed at the time of the cash transfer. The transfer came at a time when Jackson was filing for bankruptcy, and in the midst of being pursued by a court appointed receiver.

At no time did evidence or testimony satisfactorily explain the circumstances surrounding the cash transfer of $174,000.00. Jackson and Lee attempted to explain the payment by citing its use

---

[37] 11 U.S.C. § 547(b).
[38] The lease addendum is highly suspect, and the court determines it not credible.  The court finds that when the debtor first produced the lease, he failed to produce the addendum.  It is not signed by either Jackson or Lee, it is not referenced in the lease, nor does it mention the $174,000 transfer to Lee.

for taxes, rent, consideration, or as an option payment. However, given the numbers provided through testimony, the greatest amount explained was that of $127,000.00.[39]

Nor is Lee entitled to a good faith defense under TUFTA. The Texas Supreme Court requires a transferee on inquiry notice of a fraudulent transfer to conduct a diligent investigation.[40] The trustee did not allege and there was no evidence to show that Lee had actual knowledge of fraud; however, Lee received the $174,000 with inquiry notice of fraud.[41] Lee cannot prove good faith without having conducted a diligent investigation. Accordingly, the Trustee is entitled to judgment that the cash transfer of $174,000.00 constituted a fraudulent transfer under § 548(a)(1)(A) and a fraudulent transfer under TUFTA § 24.005, as the affirmative defense of reasonably equivalent value or good faith was not shown.

Finally, the Court addresses attorney's fees. Both parties seek attorney's fees under TUFTA. TUFTA provides that "the court may award costs and reasonable attorney's fees as are equitable and just."[42] TUFTA gives the court discretion to award attorney's fees based on the evidence heard.[43] Many factors are relevant in determining if an award of attorney's fees is "equitable and just" under TUFTA, including: 1) the existence of egregious conduct, 2) whether an award of attorney's fees "accomplishes the goals of TUFTA"; 3) the evidence heard, and 4) evidence of "bad faith, vexation, wantonness, oppression, or harassment relating to the filing or the maintenance of this action."[44]

TUFTA is designed to protect creditors from being "defrauded or left without recourse due to the actions of unscrupulous debtors."[45] However, the Court does not believe Lee acted egregiously, nor did he act in bad faith. Therefore, the Court declines from awarding attorney's fees. Additionally, the court notes that neither party to this litigation was fully successful in its claims or defenses. While the court recognizes that it may appear to have "split the difference," this is not the case. The Trustee was unsuccessful on one of her claims, which Lee successfully defended. However, the Trustee was successful on her other claim and Lee did not present a successful defense. Had the Trustee pursued only the $174,000 claim, an attorney fee award for the Trustee may have been justified. Alternatively, had Lee capitulated on the $174,000 claim and defended only the River Oaks claim, likewise an award to him may have been justified. However, given the mixed outcome and the conduct of the parties the court is satisfied in this case with the "American Rule."[46]

---

[39] The court disregarded this calculation, it appeared to be calculated only to justify the transfer of the $174,000 to Lee and was not otherwise credible.
[40] *Janvey v. GMAG, LLC*, 592 S.W.3d 125 (Tex. 2019).
[41] "A person is on inquiry notice when he or she is aware of facts that would have prompted a reasonable person to investigate. *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560 (tex. 2016).
[42] Tex. Bus. & Com. Code § 24.013.
[43] *Walker v. Anderson*, 232 S.W.3d 899, 919 (Tex. App.—Dallas 2007, no pet.).
[44] *In re Pace*, 456 B.R. 253, 283 (Bankr. W.D. Tex. 2011); *In re Edwards*, 537 B.R. 797, 806 (Bankr. S.D. Tex. 2015); *Citizens Nat. Bank of Tex. v. NXS Const., Inc.*, 387 S.W.3d 74, 87 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *RFAR Grp., LLC v. Epiar, LLC*, No. 11-CV-3432, 2013 WL 1743880, at *3 (N.D. Tex. Jan. 9, 2013), 3:11–CV–3432–L, 2013 WL 1748619 (N.D. Tex. Apr. 23, 2013).
[45] *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 89 (Tex. 2015).
[46] The American Rule controls assessment of attorney fees arising out of litigation. It provides that each party is responsible for paying its own attorney's fees unless there is specific authority for the granting of those fees.

Under federal law, this Court is authorized to award pre-judgment interest. The Fifth Circuit has held that such interest may be awarded in cases involving fraudulent transfers as it furthers congressional policies and compensates the estate for the time it was without use of the transferred funds.[47]  The Texas Supreme Court also recognizes the award of prejudgment interest under general principles of equity.[48]  This Court also has the discretion to impose post judgment interest.[49]

**ACCORDINGLY, IT IS ORDERED** that the Trustee has not shown that she is entitled to avoid and recover the transfer of the River Oaks Property under 11 U.S.C. § 548 and Tex. Bus. & Com. Code § 24.005.

**IT IS FURTHER ORDERED** that the Trustee has shown that she is entitled to avoid and recover the transfer of the $174,000.00 under 11 U.S.C. § 548 and Tex. Bus. & Com. Code § 24.005.

**IT IS FURTHER ORDERED** that the Trustee, Allison Byman shall be awarded a judgment for $174,000 against George M. Lee, plus prejudgment interest from April 3, 2019, to the date of judgment.   Additionally, she shall be granted post judgment interest from date of judgment to the satisfaction thereof, both at the federal judgment interest rate.

A separate final judgment will follow.

**SO ORDERED**.

SIGNED: 02/08/2021.

_____
Jeffrey P. Norman
United States Bankruptcy Judge

---

[47] I*n re Supplement Spot, LLC,* 409 B.R. 198 (Bankr. S.D. Tex. 2009).
[48] *Int'l Turbine Servs. v. VASP Brazilian Airlines*, 378 F.3d 494 (5th Cir. 2002).
[49] 28 U.S.C. § 1961(a); *see also Fidelity & Deposit Co. of Maryland v. Tri-Lam Co., Inc.*, WL 1452632, AT *5 (W.D. Tex.  May 15, 2007) (Post-judgment interest may also be awarded on a fraudulent transfer claim under Texas law.)

10 / 10